364 So.2d 984 (1978)
STATE of Louisiana
v.
Randall WEBB.
No. 61893.
Supreme Court of Louisiana.
November 13, 1978.
Rehearing Denied December 14, 1978.
*985 Alton T. Moran, Director, Allen J. Bergeron, Jr., Michael W. McKay, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Anthony J. Marabella, Jr., Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
SUMMERS, Justice.
A December 1976 indictment of the East Baton Rouge Parish Grand Jury charged that Randall Webb committed attempted aggravated rape, aggravated kidnapping, and armed robbery. Webb was tried before a jury and found guilty on all three counts. His motion for a new trial was heard, and granted on the aggravated kidnapping charge. New trials were denied in the armed robbery and aggravated rape convictions. On each of these last two convictions *986 Webb was sentenced to be confined in the custody of the Director of the Department of Corrections for a period of fifty years, the sentences to run concurrently. This appeal is from the denial of a new trial on the attempted aggravated rape and armed robbery convictions.
According to the State's witnesses, on February 2, 1976, Webb went to the house of the victim and demanded money. When she denied that she had money, he forced her at knife point to go with him to a bank to cash a check. On the way to the bank, defendant drove the victim to a wooded area and told her that he was a member of a motorcycle gang whose members were at her house waiting for her children. He threatened also that if she did not have sexual relations with him he would return to her house where all members of the gang would assault her.
After he forced her to disrobe and have sexual relations they drove to a grocery store where defendant took $2.00 from the victim to purchase gasoline. He compelled her to go with him to a bank where he forced her to cash a check for $250, then took the money and released her.
Assignment 1: Two prospective women jurors, Ragan and Weidner, were being questioned concerning their attitude toward an attempted aggravated rape prosecution and the effect of such an offense upon their judgment. In answer to a leading question that it was the rape charge that "bothered" them, both replied in the affirmative. Because of other answers, a challenge for cause was allowed as to Ragan. Weidner also conceded the "possibility" that she would be more willing to believe the woman than the man in a rape situation. When Weidner was asked if there was any problem with her being able to strictly apply the presumption of innocence, she replied that she had three daughters, and the problem would be on her mind. In summary, however, she stated that she thought that she could honestly weigh the facts from the testimony.
In ruling on the defense motion to challenge Weidner for cause, the trial judge answered the defense argument that Weidner was disqualified because of her feminist leanings, her daughters and her statement that there was a "possibility" that she would favor the victim. As to the latter challenge, the judge said, "I don't think Miss Weidner said that it was a strong possibility that she would be unduly influenced. She simply said there was a mere possibility. I think that exists for all persons."
Insofar as pertinent here, the grounds upon which a juror may be challenged for cause are:
. . . . . .
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;. . . ." La.Code Crim.Pro. art. 797(2).
As in many other facets of a criminal trial, judging the sincerity, fairness and credibility of jurors on voir dire is a matter which lies heavily upon the shoulders of the trial judge. His evaluation of the attributes required to qualify a prospective juror is entitled to great weight. Accordingly, his exercise of the wide discretion that determination requires will not be set aside unless it is arbitrary and unreasonable. Furthermore, rehabilitation of Weidner by the trial judge effectively removed the charge of bias. State v. Demouchet, 353 So.2d 1025 (La.1977); State v. George, 346 So.2d 694 (La.1977); State v. Passman, 345 So.2d 874 (La.1977); State v. Jones, 315 So.2d 650 (La.1975).
This assignment is without merit.
Assignment 3: The defendant urges on appeal that the trial judge committed error when he denied a defense motion for access to a taped interview with the alleged victim.
Sergeant Smith of the East Baton Rouge Sheriff's Department testified that he participated *987 in the investigation leading to the arrest of Webb. He recounted the steps in the investigation and arrest ending with an interrogation of Webb in the parish courthouse. At this point in Smith's testimony defense counsel stated, while the jury was retired, that he had learned that certain objects recovered during the investigation were obtained on the basis of information furnished by the victim in a taped interview. That being the case, defense counsel asserted that he had a right to listen to the taped recording prior to examining the victim. The State's attorney answered that the victim had taken the stand previously and defense counsel was given full opportunity to cross-examine her at that time; for this and other reasons the defense was not entitled to this information.
In denying the defense the right to listen to the taped recording of the interview with the victim, the trial judge ascertained that no Brady motion had been filed on behalf of defendant. He declared further that he was aware of no rule of law which would permit a defendant to compel production of the statement of a witness obtained in an investigation, unless it could be alleged that the testimony of the witness was inconsistent with the pretrial statement. When the ruling had been made defense counsel acquiesced, saying, "We can proceed, Your Honor, I'll get it out of him another way."
There was, therefore, no objection to the ruling and the matter cannot be considered on appeal. La.Code Crim.Pro. art. 841.
Assignments 4 and 5: Defendant was arrested and booked at the courthouse in Baton Rouge. The arrest followed an interview with Webb's wife in nearby Ascension Parish. Webb's wife was being detained by the authorities in Ascension Parish while Webb was being interrogated by the Baton Rouge authorities. As a result of his interrogation, Webb gave a confession which was tape recorded.
As the contention on appeal is understood, Webb's sole claim of involuntariness of the confession is that he requested permission to speak to his wife on the telephone prior to giving the statement to the Baton Rouge authorities. Permission was not granted, however, until he had given the statement, at which time he was allowed to telephone his wife. In effect, the contention is that the confession was induced by promises of the interrogating officers to release Webb's wife if he would confess.
The record does not support the defendant's contention. Officers present at the time testified that no promises or threats were made to the defendant before his statement was recorded; nor did any of the interrogating officers promise that Webb's wife would be released from detention if he gave a statement.
From Webb's testimony it can be concluded that he believed that she had been arrested because she had helped him to elude capture. His concern was that she would be charged as an accessory to his crimes, and would be retained in custody until he gave a statement. These inferences he drew from the situation surrounding him, conceding that no one responsible for his arrest or incarceration told him that these were the facts, or that they made promises or threats.
In his ruling the trial judge was of the opinion that Webb's inferences were drawn from facts within his knowledge  that his wife had helped him to elude capture  not from representations, inducements or promises by the authorities who arrested or interrogated him. Accordingly the trial judge held that the confession was admissible.
Admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless they are not supported by the evidence. La.Rev.Stat. 15:451; La.Code Crim.Pro. art. 703(C); State v. Mullins, 353 So.2d 243 (La.1977).
Assignment 7: Defendant had pled not guilty by reason of insanity. As proof of *988 his mental condition Doctor Allen Johnstone, a psychiatrist, was called to testify on his behalf. Doctor Johnstone had prepared a written report as a result of his examination of Webb, and defense counsel asked him to read it to the jury. Without objection, the report was read to the jury and the doctor was examined at length by the trial judge and cross-examined by the prosecutor on his opinion of Webb's mental condition. On redirect examination, defense counsel offered to introduce the doctor's written report into evidence. The State's attorney objected, and the trial judge sustained the objection.
The trial judge was of the opinion that the written report was sought to be introduced in order that it could be examined by the jury after they retired to deliberate. Being of the opinion that this would not be permissible, he felt the report should not be admitted. The trial judge was also of the opinion that the doctor's testimony was the best evidence because it was given under oath, whereas the report was not prepared while he was under oath. And, finally, the report had been read to the jury and the doctor had departed from the report and explained and elaborated on the contents of that document.
Without commenting upon the validity of the ruling denying the introduction of the written report, it can be safely concluded that no harm resulted to defendant by the denial and no cause for reversal of this conviction resulted. The jury had the full benefit of the report together with the doctor's explanations and elaborations on its content. La.Code Crim.Pro. art. 921.
Assignment 9: After the jury returned its verdict finding defendant guilty on all counts, defendant filed a motion for a new trial. In addition to general allegations that a new trial should be granted on all three counts, defendant set forth in the motion that the $250, which defendant allegedly forced the victim to procure for him by cashing a check, was relied upon by the State as "ransom", an essential element of the offense of aggravated kidnapping. Furthermore, according to the motion, this same $250 was also offered by the State in connection with the armed robbery charge as "anything of value", an essential element of the offense of armed robbery. La.Rev. Stat. 14:44 and 64.
Because of this, the motion alleges, the same $250 cannot serve to prove an essential element of both crimes. Therefore, one of the charges is necessarily lacking in proof of an essential element. Defendant concludes by asserting that proof of the aggravated kidnapping or armed robbery charge must fail.
The trial judge denied the motion for a new trial of the convictions for armed robbery and aggravated rape; however, being of the opinion that the $250 was proof in connection with the robbery, and not the aggravated kidnapping, he granted a new trial on the aggravated kidnapping conviction on the ground that proof of an essential element of that crime was lacking. At the time of this ruling the State sought supervisory writs but they were denied. State v. Webb, 351 So.2d 152 (La.1977).
Because of the joinder of these offenses, it is defendant's position on appeal that the use of the same money to prove essential elements of two crimes tainted the legality of all three convictions mandating a new trial as to all three.
On the other hand the State contends that it was error for the trial court to grant a new trial as to the aggravated kidnapping conviction, because defendant was not entitled to a new trial on any charge.
Defendant has no cause to complain of the denial of his motion for a new trial of the armed robbery and aggravated rape convictions. The trial judge properly denied the motion on these convictions.
The principal argument advanced by defendant is that the jury was confused by the joinder of these offenses. Initially it is noted that joinder is approved in Louisiana law. Article 493 of the Code of Criminal Procedure so provides in these broad terms:
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the *989 offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
All three offenses in this crime spree were closely related in point of time and basically arose out of one continuing transaction. They were, therefore, properly joined. Furthermore, the State contends that defendant cannot complain of this joinder because no severance was applied for as prescribed in Article 495.1 of the Code of Criminal Procedure:
"The court, on application of the prosecuting attorney, or on application of the defendant shall grant a severance of offenses whenever:
(a) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
(b) if during the trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The Court shall consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense."
A search of the record supports the State's contention. Severance was available to the defense before and during the trial. This remedy is not available after conviction.
In this Court's view, no taint resulted from the fact that the $250 was an essential element of two of the offenses charged. The number of offenses involved in this prosecution was not such that the jury was confused or presented with an unmanageable situation, nor was the evidence offered of such complexity that the trier of fact was unable to distinguish the evidence and apply the law intelligently as to each offense.
The jury received evidence that the defendant abducted the victim, threatened her life with a knife, forced her to have sexual relations with him, took two dollars from her for gasoline, forced her to cash a check for $250 and give him the proceeds, and then released her. There was, therefore, evidence of every element of armed robbery and aggravated rape, clearly and definitely defined. Granting a new trial on the conviction for aggravated kidnapping is not before this Court on appeal.
For the reasons assigned, the convictions and sentences for armed robbery and aggravated rape are affirmed.

On Application for Rehearing
TATE, Justice (concurring in denial).
The defendant appellant raises a substantial issue in his application for rehearing. He avers that he is prejudiced by the trial court's grant of a partial new trial  setting aside the conviction on the aggravated kidnapping issue, but with a denial of the new trial as to the other counts. While I do not believe his argument is meritorious insofar as it contends the partial new trial grant is unauthorized, he makes the additional contention that a retrial on the aggravated kidnapping charge will subject him to prejudice, since on the new trial he may be impeached by proof of the prior convictions in the other two charges based on the same facts which we now have affirmed. He therefore argues that a new trial should have been granted on all three counts.
The defendant primarily bases his argument on the revisions of La.C.Cr.P. art. 857, which provides: "The effect of granting a new trial is to set aside the verdict or judgment and to permit retrial of the case with as little prejudice to either party as if it had never been tried." (Italics mine.)
While I do not believe that this code article provides that the new trial be granted as to all multiple bills, when a new trial is required as to one count, I do think that it requires that, on the new trial of the *990 severed count, the defendant must be permitted to take the stand, the same as in the original trial, without being subject to impeachment by reason of the prior convictions arising out of the same facts in a consolidated trial of the multiple bills, which included the count upon which a new trial is granted. By this means, the effect of granting the partial new trial is, in accordance with the code article, "to permit retrial of the case with as little prejudice to either party as if it had never been tried."
For these reasons, I concur in the denial of the defendant's application for rehearing.