408 So.2d 1329 (1982)
STATE of Louisiana
v.
Ronald J. SUGAR.
No. 81-K-0870.
Supreme Court of Louisiana.
January 25, 1982.
Rehearing Denied February 19, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., James D. Maxwell, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Camile F. Gravel, Jr., Helen G. Roberts, of Gravel, Robertson & Brady, Ralph L. Barnett, for defendant-appellant.
CALOGERO, Justice.[*]
This defendant, Ronald J. Sugar, was convicted of aggravated burglary and sentenced to serve 21 years at hard labor.[1]
During the voir dire, immediately before the prospective juror Ms. Martha Phillips *1330 was about to be sworn as a juror she asked whether it "might make a difference" that she was divorced from an Orleans Parish Assistant District Attorney. On questioning she testified that she had discussed cases with her former husband, had discussed his opinion randomly with him, had discussed crimes of violence, and had discussed a jury verdict with him on at least one occasion. She admitted that she tends to think "more on the side of the prosecution" because of discussions with her former husband. And in further response to a question she admitted that she could not say that these things she heard from her ex-husband would not prejudice her.
The defense thereupon challenged her for cause after which the trial judge allowed questioning by the assistant district attorney. He asked her only one question:
Q"Now you've discussed this case with your husband, well not this case, but a lot of criminal cases. Well this is a completely different case. Could you sit there and decide this particular case only on the facts presented and not what you have discussed about other cases with your husband or other criminal cases what have you?
AI can't answer yes.
QYou can't. Okay."
The foregoing represents the entirety of the questioning of the prospective juror Martha Phillips after she alerted the Court to her predisposition toward the prosecution.[2]
Immediately after the prosecutor's question quoted above the trial judge denied the challenge for cause, finding "that this juror is not to the point of prejudice against the defendant in this case." The defendant objected, then excused the juror peremptorily.
Before a defendant can complain that the trial judge denied a challenge for cause of a prospective juror, the defendant must have used all of his peremptory challenges. La.C.Cr.P. art. 800; State v. Lewis, 391 So.2d 1156 (La.1980); State v. Simmons, 390 So.2d 1317 (La.1980); State v. Jones, 376 So.2d 125 (La.1979); State v. McIntyre, 365 So.2d 1348 (La.1978); State v. Hysell, 364 So.2d 1300 (La.1978). The record in the instant case reveals that defendant did use all of his peremptory challenges. Therefore this matter is properly before us.
A trial judge is vested with broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Lewis, supra; State v. Drew, 360 So.2d 500 (La.1978).
The fact that Ms. Phillips had been married previously to an assistant district attorney is not sufficient to sustain a challenge for cause. This Court has found nonprejudicial, denial of defense challenges for cause of relatives of law enforcement personnel when they have indicated that they could serve impartially and return a verdict without giving extra weight to the state's case. State v. Sonnier, 379 So.2d 1336 (La.1979) *1331 (sister of sheriff in another parish); State v. Qualls, 353 So.2d 978 (La.1977) (wife of law enforcement officer); State v. Calloway, 343 So.2d 694 (La.1976) (aunt of police officer).
This juror, however, did not state that she could serve impartially. Instead, she said that she could not answer "Yes" when asked if she could decide this case on the facts presented. Louisiana Code of Criminal Procedure article 797(2) sets forth as a basis for a challenge for cause that a juror is not impartial, whatever the cause of that impartiality. Ms. Phillips' answers preponderate in favor of the fact that she was not impartial.
The state suggests that nonetheless the defendant was not prejudiced. It is not necessary that a defendant show resulting prejudice to obtain a reversal of his conviction in a situation of this kind. He need only show (1) that he used all of his peremptory challenges and (2) that the trial judge incorrectly denied a challenge for cause. La.C.Cr.P. art. 800; State v. Sylvester, 400 So.2d 640 (La.1981); State v. Monroe, 366 So.2d 1345 (La.1978), appeal after remand 397 So.2d 1258 (La.1981). An erroneous ruling of a trial judge which deprives a defendant of one of his peremptory challenges does indeed affect a substantial right of the accused[3] and therefore requires reversal of his conviction. La.C.Cr.P. art. 921; State v. Sylvester, supra; State v. Monroe, supra. The juror might possibly have been rehabilitated upon further questioning by the prosecutor or the trial judge.[4] Unfortunately for the state, she was not. Reversible error occurred when the defense challenge for cause was denied.
Defendant's other assignments of error concern matters which are not likely to arise again; therefore we need not determine their merit. However, we do caution the prosecutor that he flirted with reversible error in his closing argument to the jury. Closing argument is to be limited to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice." La.C.Cr.P. art. 774. The prosecutor's argument contained the following"
We can't let this happen in the community. We can't let people run around with guns. We can't let people attack women. We can't let that happen. It happens all the time. There is a man that does it.
As we said in State v. Hayes, 364 So.2d 923 (La.1978), the prosecutor may not turn closing argument into a plebiscite on crime.

Decree
For the foregoing reasons, defendant's conviction is reversed and the case remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
SCHOTT, J. ad hoc concurs.
CHEHARDY, J. ad hoc dissents and assigns reasons.
LAWRENCE A. CHEHARDY, Justice Ad Hoc (dissenting).
By bill of information filed March 1, 1979, defendant, Ronald J. Sugar, was charged with violation of La.R.S. 14:60, aggravated *1332 burglary. At arraignment on June 8, 1979, defendant entered a plea of not guilty. Defendant's trial began on November 18, 1980 before a jury of twelve with defendant being found guilty as charged. Sentence of the defendant on January 21, 1981 to serve twenty years at hard labor followed a presentence investigation report. Defendant appeals his conviction to this Court urging eleven assignments of error.
Since assignment of Errors Nos. 1, 2, 5, 6, and 7 were neither briefed nor argued, these assignments are considered abandoned. State v. Blanton, 325 So.2d 586 (La.1976).
The testimony and evidence show that Starlyn Calhoun, on January 28, 1979, was dropped off at her parents' house at approximately 1 a. m. in order to pick up her car. Starlyn, after talking with her parents for about thirty minutes, returned by car to her Houma Boulevard apartment in Metairie, Louisiana. Upon arriving at her apartment she was approached from behind by the defendant, who inquired about an apartment's location. Although she advised the defendant there was no such number in the building she was followed by the defendant as she walked upstairs to her apartment. Miss Calhoun stated that in response to defendant's asking her if she wanted company, she said no and asked him to leave her alone. At this point Sugar pulled out a gun and stated: "If you don't shut-up, if you get me, if you get me caught, I'm going to shoot you." Once inside the apartment, defendant ordered Starlyn to take her clothes off. She stated she told him her roommate would be returning soon and she should lock the door. At this point as defendant walked out of the bedroom to escort her to the front door, she slammed the bedroom door, locked it and jumped out the window. She ran to a neighbor's apartment and the neighbor telephoned the police. Miss Calhoun also testified that she had never seen defendant before he approached her outside of her apartment.
Defendant testified on his own behalf during the trial. He said he had seen Miss Calhoun while he was shooting pool at Ellie's Lounge and that he went over to the bar where she was sitting and started talking to her. He testified that Miss Calhoun suggested that they go someplace else and they left the bar together. He further testified she left in her car and he followed her. Defendant said when they arrived at the apartment he began to make small talk about how nice it looked. He stated that after a short time had passed, he coaxed her down the hall toward the bedroom. Defendant further testified that when he had taken his boots off, Miss Calhoun stated she had changed her mind and she wanted him to leave. He stated he tried to get her to change her mind and left the bedroom and went into the bathroom. He testified he heard a scream and a door slam. He further testified that when he went to the bedroom door, it was locked.
Miss Calhoun identified the defendant from a photographic lineup at police headquarters. The officers then went to the residence of defendant and asked him to accompany them to headquarters for questioning.
Defendant was given his Miranda warnings and signed a rights waiver form. He then admitted being at the victim's apartment on the night in question.
Defendant, by assignment of Error No. 3, argues that the trial court erred in refusing to excuse a prospective juror, Martha Philipp, for cause, contending this ruling deprived him of one of his peremptory challenges and, therefore, constitutes a substantial violation of his constitutional or statutory rights and accordingly (under State v. McIntyre, 365 So.2d 1348, 1351 [La.1978]) requires reversal of his conviction and sentence.
Since the defendant eventually exhausted all of his peremptory exceptions before completion of the panel, he is entitled to complain of a ruling refusing to sustain a challenge for cause made by him. This Court must now determine (1) if the trial judge erred in refusing to maintain the *1333 challenge for cause complained of by defendant, and (2) if defendant actually exhausted all of his peremptory challenges. La.C.Cr.P. art. 800; State v. Lewis, 391 So.2d 1156 (La.1980).
The record establishes that defendant had actually exhausted all of his peremptory challenges before completion of the panel since he used one of his peremptory challenges to have juror Martha Philipp excused. However, we find the trial judge did not err in refusing to sustain defendant's challenge that Ms. Philipp be dismissed for cause.
Defendant relies upon La.C.Cr.P. art. 797(2) and (3) as his basis to challenge the juror for cause:
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict * * *."
During voir dire, immediately before prospective juror Martha Philipp was about to be sworn in as a juror, the following exchange occurred:
"JUROR-MARTHA PHILIPP:
Your Honor, I have a comment that I should perhaps make about myself that wasn't a question asked. Recently I was divorced from my husband and he's an Orleans Parish District Attorney. Would that make any difference?
MR. BARNETT:
May I ask her something?
THE COURT:
Yes.
MR. BARNETT:
It is Ms. Philipp?
JUROR-MARTHA PHILIPP:
Yes it is.
MR. BARNETT:
You've discussed cases with your husband, have you not?
JUROR-MARTHA PHILIPP:
Yes I have.
MR. BARNETT:
You've discussed his opinions randomly with your husband?
JUROR-MARTHA PHILIPP:
Yes.
MR. BARNETT:
You've discussed jury verdicts with your husband?
JUROR-MARTHA PHILIPP:
On one occasion, yes sir.
MR. BARNETT:
You've discussed crimes of violence as well as anything else that may be brought into the Court in New Orleans?
JUROR-MARTHA PHILIPP:
Yes, since it was a marriage.
MR. BARNETT:
Would this in anyway prejudice you on what you have heard from your husband?
JUROR-MARTHA PHILIPP:
I can't say that it wouldn't.
MR. BARNETT:
Is there anyone up there that is a defense lawyer's wife?
JURORS LAUGH. NO RESPONSE FROM JURORS.
THE COURT:
You say that this would prejudice you. How would it prejudice you?
JUROR-MARTHA PHILIPP:
Well I tend to think more on the side of the prosecution. Just from my I guess discussions with my husband.
MR. BARNETT:
I would accept that Your Honor, and ask that she be excused for cause.

*1334 MR. MAXWELL:
Could I just ask a couple of questions?
THE COURT:
Yes.
MR. MAXWELL:
Now you've discussed this case with your husband, well not this case, but a lot of criminal cases. Well this is a completely different case. Could you sit there and decide this particular case only on the facts presented and not what you might have discussed about other cases with your husband or other criminal cases what have you?
JUROR-MARTHA PHILIPP:
I can't answer yes.
MR. MAXWELL:
You can't. Okay.
THE COURT:
The Court finds that this juror is not to the point of prejudice against the defendant in this case. Therefore I'm going to deny the challenge for cause.
MR. BARNETT:
To which ruling we of course object Your Honor. And I thank you very, very much Ms. Philipp and I will excuse you peremptory.
THE COURT:
Okay. You're excused Ms. Philipp. Let's call the next four. Swear them in."
The trial judge is vested with broad discretion in ruling on a challenge for cause, which ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. McIntyre, 381 So.2d 408 (La. 1980); State v. Lewis, supra; State v. Drew, 360 So.2d 500 (La.1978). A review of the entire voir dire is essential to determine if the trial court's discretion has been arbitrary or unreasonable and resulted in prejudice to the accused. State v. McIntyre, supra; State v. Dickinson, 370 So.2d 557 (La.1979).
This Court has consistently held that bias can be removed by rehabilitation, State v. Bates, 397 So.2d 1331 (La.1981); State v. McIntyre, supra; State v. Webb, 364 So.2d 984 (La.1978).
Although, in response to the prosecutor's inquiry into whether she could decide the case only on the facts presented, Ms. Philipp answered she "couldn't say yes" and the trial judge ruled that the juror was not to the point of prejudice in this case against the defendant, apparently in considering all of the examination of Ms. Philipp the judge determined the examination established only that Ms. Philipp had some doubt about her impartiality. Furthermore, a review of the entire voir dire shows that the trial court's discretion has not been arbitrary or unreasonable resulting in prejudice to the accused. In view of the trial judge's broad discretion in ruling on a challenge for cause, I am unable to find an abuse of that discretion. Accordingly, I find this assignment of error to be without merit.
By assignment of Error No. 4 defendant contends the trial court erred in refusing to read the penalty provision for aggravated burglary to the jury and in refusing to include the penalty in his charge to the jury. Defense counsel argues that since "aggravated burglary carries a mandatory penalty (a mandatory minimum of one year in prison) the jury [was] in essence aiding and assisting in the sentencing of defendant, and was therefore, entitled to know the penalty for the crime charged."
In State v. Blackwell, 298 So.2d 768 (La. 1974), this Court held that a jury need not be told of the penalty in an armed robbery case, noting, however, that in cases in which the penalty is mandatory life, the jury was to be informed of the sentence. Therefore "when the statutory offense requires a mandatory legislative penalty, with no judicial decision as to its imposition, the jury must be informed of the sentence." State v. Prater, 337 So.2d 1107 (La.1976). See also, State v. Milby, 345 So.2d 18 (La.1977). The holding in Prater and Milby was reaffirmed in State v. Washington, 367 So.2d 4 (La.1978), and appears to be the settled opinion of this Court.
*1335 Although defense counsel argues that the minimum sentence which could be imposed was one year in prison, and to that extent the statute carries a mandatory sentence, this was also the case in the Blackwell decision. I would note that defense counsel was allowed to inform the jury of the penalty provisions of La.R.S. 14:60 during closing argument. The jury was therefore aware of the penalty involved before its ten-to-two verdict of guilty. Based on the decision in State v. Washington, supra, and the above-cited authorities, it is my opinion this assignment of error by defendant is without merit.
By assignments of Errors Nos. 8 and 9, defendant alleges the prosecutor's closing argument impermissibly commented on defendant's alleged guilt through personal opinion based on information outside the record.
Defense counsel urges that the prosecutor expressed his personal opinion as to Sugar's guilt by attacking the motive behind defendant's statement to the police, particularly with regard to defendant's shoes being found at the scene of the crime. A defense objection to these statements was overruled as was a motion for mistrial.
The defense further argues:
"In this case, the entire thrust of the prosecutor's closing was, in effect, to ridicule and discredit the defendant's position on the basis that it was identical to what all guilty persons claim. The prosecutor implied extensive experience with a multitude of persons accused (all, of course, guilty in the eyes of the prosecutor), and a pattern of defense so predictable as to not warrant individual consideration. In so asserting the full weight of his office and the alleged crimes and false defense of countless other defendants, the prosecutor went impermissibly beyond the evidence admitted at trial."
La.C.Cr.P. art. 774 provides:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
This Court has consistently held that it must be thoroughly convinced that the challenged remarks influenced the jury and contributed to the verdict before it will set aside a verdict on the ground of improper argument. State v. Carthan, 377 So.2d 308 (La.1979); State v. Lee, 364 So.2d 1024 (La. 1978); State v. Carter, 363 So.2d 893 (La. 1978).
In State v. Kaufman, 304 So.2d 300 (La. 1974), this Court held that based on the statutory prohibition of La.C.Cr.P. art. 774 and for reasons of fairness that extend beyond it, a prosecutor in Louisiana is prohibited from expressing his personal opinion of the defendant's guilt in his argument to the jury. The expression of such an opinion, however, is often held to be nonreversible error if it is apparent to the jury that it is expressly or impliedly only based on the evidence presented to the jury rather than on personal knowledge of facts outside the record. State v. Kaufman, supra.
A careful reading of the remarks by the district attorney cannot convincingly be viewed as influential and prejudicial and as having so affected the jury that they could not have reached an independent judgment based solely on the evidence presented. In my opinion the assignments of Errors Nos. 8 and 9 are without merit.
By assignment of Error No. 10 defendant argues that the trial court erred in accepting a nonunanimous verdict; that the polling of the jury indicates the verdict was ten to two for conviction; and that an acceptance of the verdict to convict defendant is neither fair nor constitutional.
La.C.Cr.P. art. 782 provides in pertinent part:

*1336 "A. * * * Cases in which the punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. * * *"
In Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), and Apodoca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court upheld the validity of nonunanimous verdicts for twelve jurors. Also, this Court has consistently held that the Louisiana jury rule violates neither the Sixth nor the Fourteenth Amendments. State v. Green, 390 So.2d 1253 (La.1980); State v. Hodges, 349 So.2d 250 (La.1977); State v. Morgan, 315 So.2d 632 (La.1975).
This assignment of error is without merit.
By assignment of Error No. 11 defendant contends his sentence is excessive and is based on improper considerations. Defendant was sentenced to twenty years at hard labor. La.R.S. 14:60 provides a minimum penalty of one year in the parish prison and a maximum penalty of thirty years.
The sentence imposed by the trial court falls well within the statutory limits. This Court has held, however, that a sentence although within the statutory limit, may be reviewed by this Court for excessiveness. State v. Sepulvado, 367 So.2d 762 (La.1979). The trial judge's reasons in imposing sentence, as required by La.C.Cr.P. art. 894.1, are an important aid to this Court when called upon to review a sentence complained of as excessive. State v. Forshee, 395 So.2d 742 (La.1981); State v. Day, 391 So.2d 1147 (La.1980); State v. Sepulvado, supra. Moreover, the trial judge is given wide discretion in the imposition of sentence within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Douglas, 389 So.2d 1263 (La.1980); State v. Spencer, 374 So.2d 1195 (La.1979); State v. Sepulvado, supra. This Court has held that a sentence is excessive if it is grossly out of proportion to the severity of the crime, or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Guiden, 399 So.2d 194 (La.1981); State v. Bonanno, 384 So.2d 355 (La.1980).
At the sentencing hearing, after allowing defendant to review the presentence investigation report for a second time, the trial judge listened to statements from both the defense attorney and the defendant. The trial judge then noted that defendant had been tried and acquitted for aggravated rape and aggravated crime against nature. He also noted that a present charge of perjury is pending against the defendant which grew out of the aggravated rape proceedings. The trial judge found that the presentence investigation report reflected that defendant had disturbing the peace "charges." The trial judge stated the report indicated defendant was committed to psychiatric treatment for curfew and traffic violations as a juvenile. He further noted that he had read all of the various letters and telegrams from defendant's family and friends.
The trial judge stated for the record that he found there was undue risk that during a period of a suspended sentence or probation defendant may commit another crime. He also stated that defendant was in need of correctional treatment or custodial environment that can be provided most effectively by his commitment to an institution. He stated that he believed the defendant went to the victim's apartment to rape her while armed with a dangerous weapon. He also stated that he considered the defendant's actions to be violent and that the only reason defendant did not carry out his act or harm the victim was because she escaped. He also noted that the victim has been under severe stress and strain both physically and mentally.
This Court has held that if the factual basis and the individual considerations upon which the sentence is based appear in the record, then review will focus upon whether the trial court's large discretion has been abused. State v. Cox, 369 So.2d 118 (La.1979). *1337 The evidence clearly showed that defendant used a gun to gain entrance into the victim's apartment for the specific purpose of raping her.
The Court has set forth extensive reasons for imposition of the sentence in this case which was well substantiated by the facts. Accordingly, the sentence of defendant is neither severe nor grossly out of proportion to the crime and is not a needless imposition of pain and suffering.
For the foregoing reasons, in my opinion, the conviction and sentence of Ronald J. Sugar should be affirmed and therefore I respectfully dissent.
NOTES
[*] Judges Patrick M. Schott, Lawrence A. Chehardy, and Denis A. Barry of the Court of Appeal, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack C. Watson and Harry T. Lemmon.
[1] Defendant is alleged to have approached a young woman nearing the entrance to her apartment in Metairie, Louisiana, and forced his way inside by brandishing a pistol. His apparent object was a sexual encounter. He failed and fled, after the victim locked him out of the bedroom and jumped out of a window. He tried to, but did not, convince the jury that he had met the young woman at a lounge earlier in the evening, had gone to her apartment at her suggestion, only to find his sexual advance rebuffed when the young woman changed her mind and locked him out of the bedroom. The jury verdict, favorable to the state, was by a vote of 10-2.
[2] Earlier, as the fifth member of a group of six jurors called for voir dire, Ms. Phillips had responded to questions put to the group as a whole. She had said yes that she believed in the presumption of innocence, and that she would not let public opinion sway her in her determinations. She and the only other woman in that group of prospective jurors also said that they would not believe the victim over other witnesses merely because the victim was a young lady. These responses, except the last of course, were given to questions asked of the whole group of prospective jurors and, more significantly, came before Ms. Phillips revealed her bias.
[3] La.Const. art. 1, § 17 provides that an accused has a right to challenge peremptorily, and further provides that the number of challenges shall be fixed by law. La.C.Cr.P. art. 799 sets forth that in cases involving the death penalty or imprisonment necessarily at hard labor the defendant shall be allowed twelve peremptory challenges.
[4] In State v. Qualls, supra, the trial judge rehabilitated the prospective juror who said that she would give added credence to the testimony of a law enforcement witness because she was married to a law enforcement officer. After questioning by the judge the juror indicated that she could believe certain witness testimony over contradictory testimony by a police officer.